East Pennsboro Area School District, Appellant *v.* Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board and East Pennsboro Area Education Association, Appellees.

Argued September 12, 1983, before President Judge CRUMLISH, JR., and Judges BARRY and BLATT, sitting as a panel of three.

*Thomas A. Beckley,* with him *Jeffrey W. Davis, Beckley and Madden,* for appellant.

*William J. Maikovich,* with him *James L. Crawford,* for appellees, Pennsylvania Labor Relations Board.

*Betty F. Perry, Killian & Gephart,* for appellees, East Pennsboro Area Education Association.

OPINION BY JUDGE BARRY, November 14, 1983:

We are once again presented with the troublesome question of whether it is the function of an arbitrator, or that of the courts, to initially determine whether an arbitrator has jursidiction over grievances allegedly arising from collective bargaining agreements in the public sector.

On December 12, 1979, following a month-long strike, the East Pennsboro Area School District (District) and East Pennsboro Area Education Association (Association) entered into a collective bargaining agreement (Agreement) covering the period through August 31, 1982. Because of the work stoppage, the District scheduled only 170 days of pupil instruction despite the fact that the remaining ten days needed to reach the mandated 180 days of instruction could have been scheduled before June 30, 1980, the last allowable day of student attendance during the regular 1979-1980 school year. As a result of the shortened school year, all members of the Association suffered a reduction in their annual salaries called for in the Agreement.

On June 18, 1980, the Association, on behalf of all the members of the bargaining unit, filed a grievance alleging that the failure to schedule 180 days of pupil instruction violated numerous sections of the Agree-

ment. The Agreement provided for a four-step method of resolving grievances, the fourth step being arbitration. Following the denial of the grievance at the first three steps, the Association proposed that the grievance be submitted to arbitration. The District, however, refused, contending that the dispute was outside the scope of the Agreement.

Faced with the District's refusal to arbitrate, the Association filed an unfair labor practice charge with the Pennsylvania Labor Relations Board (PLRB) alleging that the District's refusal to submit the dispute to arbitration constituted an unfair labor practice as defined in Section 1201 of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, 43 P.S. §1101.1201 (Supp. 1965-82). The PLRB, thereafter, issued a complaint and notice of hearing. Following the hearing, the PLRB issued a proposed decision which found that the District's refusal to arbitrate constituted an unfair labor practice. Exceptions filed by the District were dismissed and on May 12, 1981, the PLRB's order was made final. The District then appealed to the Court of Common Pleas of Cumberland County which affirmed the final order of the PLRB. This appeal followed.

Section 903 of PERA explicitly provides, "Arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is *mandatory*." 43 P.S. §1101.903 (emphasis added).

While all disputes involving the interpretation of a collective bargaining agreement are covered by PERA, it must be remembered that:

> courts are not at liberty to require submission
> to arbitration unless the parties have agreed expressly to do so. The submission to arbitration
> is essentially a contract with the authority of

the arbitrators derived from mutual consent of the parties to the terms of the submission.

*Neshaminy Federation of Teachers v. Neshaminy School District,* 59 Pa. Commonwealth Ct. 63, 67, 428 A.2d 1023, 1025 (1981).

In deciding whether a dispute or grievance presents an arbitrable question, one must determine whether the parties themselves intended arbitration. Of course, the parties' intent is evidenced by the collective bargaining agreement and the circumstances surrounding its execution. *Community College of Beaver County v. Community College of Beaver County Society of the Faculty,* 473 Pa. 576, 375 A.2d 1267 (1977).

The best evidence that the parties intended not to arbitrate concerning a class or classes of disputes or grievances is an express provision in the collective bargaining agreement excluding certain questions from the arbitration process. Just as parties can contract to arbitrate certain questions they may also contract not to arbitrate in other areas. The instant Agreement must therefore be reviewed to determine if the parties intended to arbitrate this grievance.

Section 9.00 of the Agreement provides the following on the questions of arbitrability. A grievance is defined as, ''a claim based upon an event or situation which affects the conditions or circumstances under which an employee works allegedly caused by misinterpretation or inequitable application of this collective bargaining agreement.'' Section 9.02 further provides:

> The arbitrator shall have no power to add to subtract from or modify the terms of this collective bargaining agreement nor shall the arbitrator have the power to require any act which violates the law or this collective bargaining

agreement. The decision of the arbitrator shall be final and binding upon the employer the association and the employees.

Section 8.00 also provides:

Recognizing that the successful operation of the employer school system depends on the cooperation of the parties hereto it specifically is understood and agreed that the employer shall have the exclusive right to supervise manage and control the operation of its school system. The employer shall not exercise any rights in violation of this collective bargaining agreement. The employer specifically retains the right to exercise all powers and rights granted to the employer under the laws of Pennsylvania (including the Pennsylvania School Code of 1949 as amended).

We believe the definition of a grievance is particularly instructive in this case. Not only misinterpretations of the Agreement are involved; the parties here intended that an "inequitable application" of the Agreement which "affects the conditions or circumstances under which an employee works" would present an arbitrable question. When faced with such a broad definition of a grievance compared to the very general language excluding areas from the arbitration process, one would be hard pressed to find that a question concerning how many days the employees will work was not an arbitrable question.

At this juncture, however, we must keep in mind the crux of the instant controversy. There is no question that someone other than the parties must be called on to resolve a dispute over whether an arbitrable issue has been presented. In this jurisdiction, such question could possibly be answered by the arbitrator, the PLRB or the courts.

Recent decisions of our Pennsylvania Supreme Court are pertinent. In *Pennsylvania Labor Relations Board v. Bald Eagle Area School District (Bald Eagle)*, 499 Pa. 62, 451 A.2d 671 (1982), a dispute arose concerning the collective bargaining agreement. Just as here, the Bald Eagle Area School District (District) refused to submit the issue to arbitration arguing, *inter alia,* that any award would be illegal or impossible of performance. The employees pursued their appropriate relief before the PLRB which found the District had committed an unfair labor practice. The Court of Common Pleas of Center County reversed and we affirmed. *Pennsylvania Labor Relations Board v. Bald Eagle Area School District,* 44 Pa. Commonwealth Ct. 254, 403 A.2d 1038 (1979). The Supreme Court reversed and sent the case back for arbitration. Importantly, the unanimous Court stated:

> The wisdom and the policy favoring arbitration of grievances arising under collective bargaining agreement and the folly of permitting a full preliminary bout in the courts over the issue of an arbitrator's jurisdiction is demonstrated by this case. We find it absurd that, after six years, the substantive issue of one days' pay for the Bald Eagle Area teachers has not been determined while the courts yet another time have examined the PERA policy favoring arbitration.

> Furthermore, today's decision only returns the issue to the forum where it should have been decided at the outset; it obviously leaves open the possibility of additional review. However, were we to decide otherwise we would only encourage potential parties to such disputes to continue to follow the practice of preliminarily

litigating through one forum the power of another to decide the sugstantive issue. We condemn that practice and hold that hereafter issues involving conflicts between the public sector collective bargaining agreement and fundamental statutory policies of this Commonwealth must be presented first to arbitration for determination, subject to appropriate court review of any award in conflict of such policies.

*Bald Eagle,* 499 Pa. at 67-68, 451 A.2d at 673-74 (1982).

The District argues that it can refuse to submit a grievance to arbitration where, "it can be said with positive assurance that the dispute in question does not arguably involve an interpretation of the provisions of the collective bargaining agreement." *Pennsylvania Labor Relations Board v. Greater Johnstown Area Vocational-Technical School,* 49 Pa. Commonwealth Ct. 337, 339, 411 A.2d 1260, 1261 (1980).

In light of the Supreme Court's recent mandate in *Bald Eagle,* we are compelled to conclude that the above-mentioned language of *Greater-Johnstown* is no longer viable. Recognizing its validity would provide an exception for an employer resisting arbitration that would swallow up the general rule of *Bald Eagle.* Remembering that the collective bargaining agreement evidences the intent of both the parties in this area, it seems clear that should either party seek arbitration there exists at least an argument that an interpretation of provisions of the Agreement is involved.

It cannot too often be stated that Pennsylvania labor policy in the public area *requires* the submission to arbitration of disputes involving the collective bargaining agreement. *County of Allegheny v. Allegheny County Prison Employees,* 476 Pa. 27, 381 A.2d 849 (1977). By allowing the employer to unilaterally re-

fuse to submit a dispute to arbitration would in effect allow the employer's interpretation to control. While the PLRB has statutory authority to determine questions of arbitrability when it decides an unfair labor practice has been committed by a refusal to arbitrate, the Supreme Court has made clear that questions of arbitrability must first be submitted to an arbitrator and that any refusal to arbitrate a dispute concerning a collective bargaining agreement is per se an unfair labor practice.

The reluctance of various public employers to submit disputes to arbitration evidently centers on the limited scope of judicial review from an arbitrator's decision. As the Supreme Court stated in *Community College of Beaver County*, 473 Pa. at 593-94, 375 A.2d at 1275:

> To state the matter more precisely, where the task of an arbitrator, PERA or otherwise, has been to determine the intention of the contracting parties as evidenced by their collective bargaining agreement and the circumstances surrounding its execution, then the arbitrator's award is based on a resolution of a question of fact and is to be respected by the judiciary if "the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention . . ." Ludwig Honold Manufacturing Co. v. Fletcher, 405 F.2d 1123, 1128, (3rd Cir. 1969). It was this approach which was meant to be suggested by the brief statement in International Brotherhood of Firemen and Oilers, quoted supra, that "the arbitrator's interpretation of the contract must be upheld if it is a reasonable one." 465 Pa. at 366, 350 A.2d at 809.

Such limited judicial review, however, is not to be viewed with distrust; to the contrary, sound policy considerations mandate this type of review. Most importantly allowing an arbitrator to decide what is essentially a factual question[1] conserves our limited judicial resources.

As the United States Supreme Court has stated:

The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards. . . .

---

[1] It has long been accepted in contract law that an ambiguous written instrument presents a question of fact for resolution by the finder-of-fact, whereas the meaning of an unambiguous written instrument presents a "question of law" for resolution by the court. As the authorities in the field of contracts make clear, however, the latter exercise is also in actuality a factual, not a legal, decision. For a variety of reasons the common law has long thought it best to leave to the court rather than to the jury the essentially factual question of what the contracting parties intended. This factfinding function exercised by the court is predominated a "question of law", therefore, not because analytically it is a question of law but rather to indicate that it is a trial judge, not the jury, to whom the law assigns the responsibility for deciding the matter.

. . . .

The policy considerations which compelled the common law to make the division (jury illiteracy, lack of respect for writing, etc.) are absent in the arbitration forum. *A fortiori* is this true under a statute such as PERA, which mandates arbitration as the exclusive means of interpreting collective bargaining agreements in the first instance. See 43 P.S. §1101.903.

*Community College of Beaver County*, 473 Pa. at 592-93, 375 A.2d at 1275.

An arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may, of course, look for guidance from other sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. *When the arbitrator's words manifest an infidelity to this obligation the courts have no choice but to refuse enforcement of the award.* United Steel Workers v. Enterprise Wheel and Car Corp., 363 U.S. 593, 596 (1960) (emphasis added).[2]

In *Community College of Beaver County,* the Court held that the judicial review of arbitration awards provided by the Arbitration Act of 1927 was essentially the same as the review called for under federal labor policy and PERA. As the emphasized portion of the above quoted language of *Enterprise Wheel and Car* points out, the judiciary may overrule the arbitrator's determination of what the parties to a collective bargaining agreement intended to provide, again, a factual determination, if that determination is not supported by the evidence, consisting of the collective bargaining agreement and the circumstances surrounding its execution. A court's role is merely that of a reviewing body, making certain that the factual findings of the arbitrator are supported by the evidence of the parties' intent. Furthermore, the court can refuse to affirm any arbitrator's award which is illegal. *Neshaminy Federation of Teachers v. Neshaminy School District,* Pa. , 462 A.2d 629 (1983). Any judicial intervention prior to this

---

[2] We must note that while federal labor policy only favors arbitration this Commonwealth's labor policy in relation to public employees mandates it.

point is premature, frustrating the intent of the arbitration process. "The parties to a collective bargaining agreement have bargained for the arbitrator's construction, not the court's; thus a court has no business intruding into the domain of the arbitrator because its interpretation of the agreement differs from his." *Scranton Federation of Teachers v. Scranton School District,* 498 Pa. 58, 65, 444 A.2d 1144, 1147 (1982).

Finally, "[t]he broad judicial deference given arbitrator's decisions applies with equal force to determinations regarding the arbitrability of the subject matter of the grievance." *Id.*

The legislature has provided:

The General Assembly of the Commonwealth of Pennsylvania declares that it is a public policy of this Commonwealth and the purpose of this act to promote orderly and constructive relationships between all public employers and their employees subject, however, to the paramount right of the citizens of this Commonwealth to keep inviolate the guarantees for their health, safety and welfare. Unresolved disputes between the public employer and its employees are injurious to the public and the General Assembly is therefore aware that adequate means must be established for minimizing them and providing for their resolution. Within the limitations imposed upon the governmental processes by these rights of the public at large and recognizing that harmonious relationships are required between the public employer and its employees, the General Assembly is determined that the overall policy may best be accomplished by (1) granting to

public employees the right to organize and choose freely their representatives; (2) requiring public employers to negotiate and bargain with employee organizations representing public employees and to enter into written agreements evidencing the result of such bargaining; and (3) establishing procedures to provide for the protection of the rights of the public employee, the public employer and the public at large.

Section 101 of PERA, 43 P.S. §1101.101 (Supp. 1965-82).

The legislature has provided through PERA that collective bargaining between public employers and employees is the method by which labor relations are to be conducted and that arbitration is the mandatory method of resolving disputes arising from the collective bargaining process. Yet certain public employers have obstinately refused to accept this legislative mandate. Should an employer wish to exclude areas from arbitration, it should do so through the collective bargaining process rather than by asking the courts to rectify the employer's oversights and/or shortcomings in evidencing its intent through the collective bargaining agreement.[3]

Order affirmed.

## ORDER

AND Now, November 14, 1983, the order of the Court of Common Pleas of Cumberland County, No. 2418 Civil 1981, dated June 21, 1982, is affirmed.

---

[3] The district raises a number of issues concerning the merits of the arbitrability question. As the foregoing discussion has, hopefully, made clear, however, we refuse to reach those questions until the arbitrator has first ruled on this question.