**HANOVER SCHOOL DISTRICT,**
Appellant,

v.

**HANOVER EDUCATION
ASSOCIATION.**

Commonwealth Court of Pennsylvania.

Argued Dec. 3, 2002.
Decided Jan. 3, 2003.

Michael I. Levin, Huntingdon Valley, for appellant.

J. Paul Helvey, Harrisburg, for appellee.

BEFORE: FRIEDMAN, Judge, COHN, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge FRIEDMAN.

The Hanover Public School District (School District) appeals from the June 24, 2002, order of the Court of Common Pleas of York County (trial court) dismissing the School District's petition to vacate an arbitrator's award (Petition). We affirm.

The School District and the Hanover Education Association (Association), which is the exclusive collective bargaining agent for classroom teachers in the School District, were parties to a collective bargaining agreement (CBA). In June of 2000, Gregory Albrecht (Grievant), who is a teacher for the School District, received a three-day disciplinary suspension without pay for slapping a computer mouse from a student's hand, in violation of the School District's corporal punishment policy. The Association submitted a grievance on Grievant's behalf, alleging that the School District violated Grievant's contractual rights in various Articles of the CBA by suspending Grievant without just cause. Grievant sought an award rescinding the disciplinary action and removing all references to assault and battery from a letter of reprimand issued to Grievant in conjunction with the suspension.

The grievance process culminated in a hearing before an Arbitrator, at which the School District defended the merits of its action suspending Grievant and also contested the substantive arbitrability of the grievance. The School District maintained that the issue submitted to the Arbitrator was not subject to the grievance procedure set forth in the CBA because the CBA contained no provision requiring that discipline be administered only for just cause or any provision governing employee discipline. Following the hearing, the Arbitrator determined that the grievance contesting the School District's disciplinary action was substantively arbitrable based on the "generally accepted principle of implied just cause."[1] (Arbitrator's decision at 6,

---

1. In dealing with the issue of substantive arbitrability, the Arbitrator stated:

R.R. at 16a.) The Arbitrator then ruled on the merits in favor of the School District, upholding the propriety of Grievant's three-day suspension.

The School District filed its Petition to vacate the award with the trial court, specifically challenging the Arbitrator's ruling that the suspension was arbitrable notwithstanding the absence of a provision in the CBA addressing employee discipline. However, the trial court denied the School District's request for relief and dismissed the Petition, holding that the case was controlled by the binding precedent in *North East Education Association v. North East School District*, 117 Pa. Cmwlth. 19, 542 A.2d 1053 (1988) (holding that the grievance arising out of a school district's discipline of a teacher was arbitrable even though the collective bargaining agreement between the school district and the union of which the teacher was a member lacked any disciplinary provision), *rev'd on other grounds, Manheim Central Education Association v. Manheim Central School District*, 132 Pa.Cmwlth. 94, 572 A.2d 31, *appeal denied,* 525 Pa. 661, 582 A.2d 326 (1990). (*See* trial ct. op. at 2, Appellant's brief at Appendix "B.") The School District now appeals from the order of the trial court, arguing that the trial court erred in upholding the Arbitrator's

determination that the CBA contained an "implied just cause" provision.

■ Pennsylvania courts have long recognized and endorsed arbitration as the preferred forum for resolving public labor disputes, *see e.g. Leechburg Area School District v. Dale*, 492 Pa. 515, 424 A.2d 1309 (1981); *McKeesport Area School District v. McKeesport School Service Personnel Assoc., PSSPA/PSEA*, 137 Pa.Cmwlth. 28, 585 A.2d 544 (1990); *Manheim; American Federation of State, County and Municipal Employees, District Council 88, AFL–CIO v. City of Reading*, 130 Pa. Cmwlth. 575, 568 A.2d 1352 (1990), and have promoted the use of arbitration by adopting the "essence test," a highly circumscribed standard of review affording great deference to arbitrators' awards. In *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA–NEA)*, 560 Pa. 135, 743 A.2d 405 (1999), our supreme court provided the two-pronged analysis to be applied to determine whether this "essence test" was met, stating:

First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is em-

---

The only basis on which [Grievant's] grievance would be arbitrable would be under the theory of implied just cause. As is stated in Elkouri and Elkouri, *How Arbitration Works*, Fifth Edition, at page 886: "... many arbitrators would imply a just cause limitation in any collective bargaining agreement. For instance, Arbitrator A. Dale Allen Jr., held that 'a just cause limitation on discharge is implied in any labor agreement. The reasoning is that '[i]f management can terminate at any time for any reason, such as one finds in the employment at will situation, then the seniority provision and all other work protection clauses of the labor agreement are meaningless.'

This is reiterated in *Fairweather's Practice and Procedure in Labor Arbitration*, Fourth Edition, which states at page 273: "... the typical labor agreement expressly, or impliedly, creates a right to employment unless the employee engages in conduct justifying discharge for 'cause,' 'just cause,' or 'proper cause.' " Further, there is no management rights clause in the parties' [CBA], and *Fairweather* notes: "Absent contractual language that expressly reserves to management the right to discipline or terminate an employee in a particular situation, arbitrators turn to the principle of 'just cause.' " (at page 316).
(Arbitrator's decision at 6, R.R. at 16a.)

braced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.

*Id.* at 149, 743 A.2d at 413. The broad deference given to the arbitrator's decision applies equally to his or her determination regarding the arbitrability of the subject matter of the grievance. *Bristol Township Education Association v. Bristol Township School District,* 74 Pa.Cmwlth. 445, 460 A.2d 387 (1983).

██ The School District argues that the Arbitrator's award cannot satisfy either prong of the test set forth in *State System of Higher Education.* The School District maintains that, because the CBA contains no provisions regarding discipline or just cause, the matter is not encompassed within the CBA's definition of "grievance."[2] The School District also contends that the Arbitrator's ruling that just cause was an implied contractual term cannot in any rational way be derived from the CBA, particularly where there was no extrinsic evidence, such as contract negotiations history or past practice, which could justify its inclusion. The School District asserts that the Arbitrator, in effect, worked a modification to the CBA which neither party contemplated or negotiated, thereby violating the CBA's express requirement that any such modification be agreed to in writing by the parties.[3] Thus, the School District takes the position that the Arbitrator exceeded the authority granted to him under the CBA,[4] and his decision must be set aside. We are not persuaded by the School District's arguments, and, like the trial court, we hold that *North East* is squarely on point on both the facts and law of the present case and, thus, constitutes binding precedent requiring us to uphold the Arbitrator's decision to accept jurisdiction over the grievance here.[5]

**2.** ARTICLE X.A.1 of the CBA defines "grievance" as "an alleged violation of *any provisions of this agreement* or any alleged discriminatory application of such provisions." (R.R. at 29a, emphasis added.)

**3.** ARTICLE II.A.1 of the CBA provides "This agreement shall not be modified in whole or in part by the parties except by an instrument, in writing, duly executed by both parties." (R.R. at 21a.)

**4.** The School District cites ARTICLE X.C.7(c) of the CBA, which provides, in relevant part, "The arbitrator shall be without power or authority to make any decisions which require the commission of an act prohibited by law or which is violative of the terms of this agreement." (R.R. at 32a.)

**5.** Contrary to the School District's claim, the arbitrator in *North East* did not rely on bargaining history between the parties to justify reading an implied just cause provision into the collective bargaining agreement; instead, the arbitrator merely noted the parties' bargaining history as a source of additional support for his decision to arbitrate the grievance there. Explaining his real rationale for including the just cause for discipline provision into the agreement, the arbitrator stated:

An absolute right to discipline is utterly incongruous with the existence of a collective bargaining agreement.... A logical reading of the collective bargaining agreement—and a reading which is consistent with the weight of arbital authority—requires a finding that a just cause provision is so basic and vital to the functioning of the agreement that it is implied in the [a]greement. The generally subscribed to rule of construction is well expressed as follows: '[A] "just cause" basis for consideration of disciplinary action is, absent a clear provision to the contract [sic], implied in a modern collective bargaining agreement.' *Cameron Iron Works,* 25 LA 295, 301 (Boles, 1955).

In *North East,* a teacher in the North East School District received a three-day disciplinary suspension. The teacher filed a grievance arguing that the suspension violated various provisions of the collective bargaining agreement between the teacher's union and the district. However, when the matter proceeded to arbitration, the district maintained that the disciplinary suspension was not arbitrable because the collective bargaining agreement contained no provision regarding employee discipline, and, thus, the dispute did not fall within the agreement's definition of "grievance." Like the Arbitrator here, the arbitrator in *North East* disagreed that the lack of such a provision precluded arbitration, and he determined that the matter was arbitrable on the basis of an "implied just cause for discipline" provision in the collective bargaining agreement.

This court upheld the arbitrator's determination, reasoning as follows:

> As we said in *East Pennsboro [Area School District v. Pennsylvania Labor Relations Board,* 78 Pa.Cmwlth. 301, 467 A.2d 1356, 1359 (1983)], "Remembering that the collective bargaining agreement evidences the intent of both the parties in this area, it seems clear that should either party seek arbitration[,] there exists at least an argument that an interpretation of provisions of the agreement is involved."

In *Pennsylvania Labor Relations Board v. Bald Eagle Area School District,* 499 Pa. 62, 68, 451 A.2d 671, 674 (1982) our Supreme Court stated, "We ... hold that hereafter issues involving conflicts between a public sector collective bargaining agreement and fundamental statutory policies of this Commonwealth must be presented first to arbitration

for determination, subject to appropriate court review of any award in conflict with such policies."

Accordingly, we find that the arbitrator in the case before us properly assumed the responsibility for determining whether [the teacher's] grievance was arbitrable and the trial court erred in determining that the arbitrator exceeded his authority in accepting jurisdiction over the grievance.

Further, following *Bald Eagle,* we found in *East Pennsboro* that an arbitrator must initially determine whether a grievance which arises out of a disciplinary action is arbitrable even in the absence of a disciplinary provision in the collective bargaining agreement. We stated: "Should an employer wish to exclude areas from arbitration, it should do so through the collective bargaining process rather than by asking the courts to rectify the employer's oversights and/or shortcomings in evidencing its intent through the collective bargaining agreement." 467 A.2d at 1361. We find that this admonition is equally applicable in the present case and, accordingly, reject the [school district's] argument that the lack of a disciplinary provision in the collective bargaining agreement operated to preclude the arbitrator from exercising jurisdiction over [the teacher's] grievance.

*North East,* 542 A.2d at 1055–56 (citations omitted). *North East* is the only appellate case in Pennsylvania to address the issue of whether a labor arbitrator commits reversible error by determining that the understanding that employees cannot be disciplined without just cause is implicit in collective bargaining agreements that lack explicit employee discipline provisions.

(Appellant's brief, Appendix "D" at 7–8.) Moreover, we note that the School District's claimed factual distinction appears in the ar-

bitrator's decision; this court's decision in *North East* makes no mention of bargaining history.

The School District presents no conflicting authority.[6]

We note further that ARTICLE XIV of the CBA provides in relevant part that "[b]oth parties shall faithfully abide by the provisions of [the Public Employe Relations Act (PERA)[7]]." (R.R. at 36a.) The primary public policy objective of PERA was to establish a harmonious and fair working relationship for the benefit of citizens and also for the protection of employees, *see* section 101 of PERA, 43 P.S. § 1101.101; *Chester Upland School District v. McLaughlin,* 655 A.2d 621 (1994), *aff'd,* 544 Pa. 199, 675 A.2d 1211 (1996). Our result here is consistent with PERA's policy.

 When the dispute involves something as fundamental to the employment relationship as an employer's attempt to withhold employment through a disciplinary termination or suspension, the ability of the employee to seek redress through arbitration is not to be discarded lightly. Clearly, the best evidence that parties to a public employment collective bargaining agreement intended not to arbitrate a particular class of disputes is an express provision in the agreement excluding these questions from the arbitration process. *East Pennsboro.* Where, as here, the collective bargaining agreement contains no such limiting provision, to subject a unionized employee to arbitrary discipline resulting in a loss of employee rights and protections afforded by the agreement, without recourse to protest the employer's action, would render the agreement a mere sham and run counter to PERA's objective to provide for mutual fair dealing by the parties with regard to employment issues.[8]

Given PERA's broad mandate that grievances be submitted to arbitration,[9] the state's policy favoring arbitrability of

---

**6.** We reject the School District's assertion that *Delaware County v. Delaware County Prison Employees Independent Union,* 552 Pa. 184, 713 A.2d 1135 (1998), which involves the interpretation of an explicit contract provision governing employee discipline, and *Montgomery County Intermediate Unit v. Montgomery County Intermediate Unit Education Association,* 57 Pa. D. & C. 4th 88 (2001), *vacated,* 797 A.2d 432 (Pa.Cmwlth. 2002), a common pleas court decision that was vacated, are relevant to our decision.

**7.** Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301.

**8.** In this regard, we note that the CBA's silence as to disciplinary matters extends to the School District's right to discipline its employees; however, we have no problem accepting that there is implied in the CBA an inherent right of the School District, in its management position, to discipline employees who violate expected standards of behavior. By the same token, it is just as logical to imply that the CBA would require such discipline to be meted out fairly. This is consistent with section 706 of the PERA, which states, "[n]othing contained in this act shall impair the employer's right to hire employes or to discharge employes *for just cause* consistent with existing legislation." 43 P.S. § 1101.706, (emphasis added). For this reason too, the Arbitrator here correctly concluded that the dispute at issue arose out of and was rationally related to the CBA; consequently, his decision should not be disturbed. *State System of Higher Education.*

**9.** In private sector grievance arbitration, the United States Supreme Court established the rule that, except when the contract clearly and expressly excludes the dispute from arbitration, the process set up in collective bargaining negotiations must prevail. *See United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corporation,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). In *Pittsburgh Joint Collective Bargaining Committee v. City of Pittsburgh,* 481 Pa. 66, 391 A.2d 1318 (1978), our supreme court compared Pennsylvania's policy toward arbitration with that of the federal policy and ob-

labor disputes, the non-existence of any CBA term explicitly excluding employee discipline from the grievance process and the intrinsic characteristics of a collective bargaining agreement governed by PERA that mitigate in favor of employment protection, we conclude that it was entirely proper for the Arbitrator here to review the CBA and, finding nothing explicitly excluding disciplinary matters from arbitration, conclude that Grievant's suspension was an arbitrable matter based on a just cause provision impliedly present in the CBA.

Accordingly, based on the controlling precedent in *North East* and the policies expressed in PERA, we affirm.

### ORDER

AND NOW, this 3rd day of January, 2003, the order of the Court of Common Pleas of York County, dated June 24, 2002, is hereby affirmed.

served that, while federal policy merely *favors* the submission of disputes to arbitration, section 903 of the PERA, 43 P.S. § 1101.903, *requires* the arbitration of disputes or grievances arising out of the provisions of a collective bargaining agreement. Thus, the court concluded that the federal rule regarding arbitrability should apply with even more force where collective bargaining is done under PERA.