IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Northeast Bradford School District, :
:
Appellant :
:
v. : No. 2007 C.D. 2016
: Argued: June 5, 2017
Northeast Bradford Education :
Association, PSEA/NEA :


BEFORE:　HONORABLE P. KEVIN BROBSON, Judge
　　　　　HONORABLE MICHAEL H. WOJCIK, Judge
　　　　　HONORABLE JOSEPH M. COSGROVE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK　　　　　　　　　　　FILED: June 28, 2017


　　　　Northeast Bradford School District (District) appeals from the November 2, 2016 order of the Bradford County Court of Common Pleas (trial court) denying the District's petition to vacate an arbitration award. The arbitrator concluded that the District violated the collective bargaining agreement (CBA) between the District and the Northeast Bradford Education Association, PSEA/NEA (Association) when it demoted three full-time professional employees to part-time status. The arbitrator's award ordered the District to reinstate the employees to full-time status and make them whole with respect to wages and benefits. For the following reasons, we affirm.

　　　　By letter dated June 3, 2014, the District notified Larry Otis, a full-time physical education teacher, that he was to be reassigned to a part-time position. The letter informed Otis that he had the option of consenting to the

demotion or proceeding to a hearing before the school board. On June 6, 2014, Otis advised the District that he elected to have a hearing. By letters dated June 10, 2014, the District also notified full-time reading specialist Colleen Kane and full-time art teacher Belinda Williams that they were to be reassigned to part-time positions. The letters similarly informed Kane and Williams of their options under Section 1151 of the Public School Code of 1949 (School Code)[1] to consent to the reassignments or exercise their right to a hearing before the school board. Williams asked for a hearing; Kane did not respond.

The letters sent to all three employees gave "lack of a need for a full time position" as the reason for their reassignment. The letters advised them that the superintendent would formally recommend their reassignment, and the school board would take final action, at a scheduled June 16, 2014 meeting. Further, the letters informed each employee that his or her duties and yearly salary would be reduced, and, consequently, the reassignment may constitute a demotion under Section 1151 of the School Code.

On June 13, 2014, Otis and Williams withdrew their requests for a hearing and indicated that they would pursue other legal options. By email that same date, the District's superintendent informed the school board that the

---

[1] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §11-1151, which states in relevant part:

> [T]here shall be no demotion of any professional employe either in salary or in type of position, except as otherwise provided in this act, without the consent of the employe, or, if such consent is not received, then such demotion shall be subject to the right to a hearing before the board of school directors and an appeal in the same manner as hereinbefore provided in the case of the dismissal of a professional employe.

employees had withdrawn their requests for a hearing and that the reassignment of the three employees would appear on the agenda for the board's June 16, 2014 meeting, at which time the board approved the reassignments.

Subsequently, the Association filed grievances on behalf of the reassigned employees, asserting that the demotions and corresponding reductions in salary and benefits were in violation of the CBA. Arbitrator John M. Skonier, Esq., held a hearing on September 3, 2015.

The arbitrator initially addressed the District's contention that the matter is not arbitrable based on the doctrine of election of remedies. Observing that no action had been taken, and no hearing had been scheduled or held, the arbitrator concluded that the grievances were arbitrable under *Hanover School District v. Hanover Education Association,* 814 A.2d 292 (Pa. Cmwlth. 2003), and *East Pennsboro Area School District v. Pennsylvania Labor Relations Board*, 467 A.2d 1356 (Pa. Cmwlth. 1983).[2]

---

[2] In *Hanover*, a teacher received a three-day disciplinary suspension without pay, and the union submitted a grievance on his behalf. At a hearing before an arbitrator, the school district asserted that the issue submitted to the arbitrator was not subject to grievance arbitration under the parties' collective bargaining agreement because the agreement contained no provision governing employee discipline. The arbitrator determined that the disciplinary action was substantively arbitrable based on the generally accepted principle of implied just cause. Ruling on the merits, the arbitrator upheld the propriety of the three-day suspension. On appeal, citing, *inter alia*, *East Pennsboro*, we affirmed, emphasizing the "broad mandate [of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§1101.101-1101.2301], that grievances be submitted to arbitration, the state's policy favoring arbitrability of labor disputes, the non-existence of any CBA term explicitly excluding employee discipline from the grievance process and the intrinsic characteristics of a collective bargaining agreement governed by PERA that mitigate in favor of employment protection . . . ." *Hanover*, 814 A.2d at 297-98.

In *East Pennsboro*, we explained that the "best evidence that the parties intended not to arbitrate concerning a class or classes of disputes or grievances is an express provision in the
**(Footnote continued on next page…)**

3

The arbitrator next rejected the District's assertions that the demotions were presumptively lawful pursuant to Section 1151 and that the employees failed to meet their burden of proving that the school board acted in an arbitrary or discriminatory manner or based upon improper considerations. The arbitrator found that: the CBA recognized only full-time employees; the parties did not negotiate the manner in which salary and benefits would be paid to employees working less than full time; the wage and salary provisions of the CBA, and appendices, etc., do not provide for reductions in salary or benefits based on a reduction in hours; the CBA does not include a management rights clause; and the CBA includes a waiver provision that states that "all negotiable items have been discussed and that no additional negotiations on the agreement will be conducted" for the duration of the agreement unless both parties consent.

Before the arbitrator, the Association stressed that its members ratified a one-year extension of the CBA with a wage freeze and an agreement that no employees would be furloughed, laid-off, or separated from employment except for just cause. The arbitrator accepted the Association's contention that the District's actions violated the basic concepts of good faith and fair dealing.

The arbitrator stated:

> The parties are currently negotiating their collective bargaining agreement and have been since 2012. Article I [of the collective bargaining agreement], the recognition clause, recognizes the Association as "the bargaining agent for the full-time professional employees under regular contract." There is no inclusion of part-

---

**(continued…)**

collective bargaining agreement excluding certain questions from the arbitration process." 467 A.2d at 1358.

4

time employees. There is also no management rights clause. On April 5, 2011, the parties signed a memorandum of understanding for an "Extension of Collective Bargaining Agreement." The parties agreed to a one-year extension of the collective bargaining agreement with a wage freeze and an agreement that no employees would be furloughed, laid-off or separated from employment except for just cause. The parties are currently working under the *status quo* of that agreement.

As argued by the Association, the parties' collective bargaining agreement does not provide for demotions. The recognition clause only specifies full-time professional employees. In addition to the recognition clause, there are numerous contractual provisions which support this position. The record reveals that there were no part-time professional employees until the instant demotions. In the contract extension, the parties agreed that there would be no furloughs, lay-offs, suspensions or separations from employment, except for just cause, in exchange for a wage freeze. There was no reason for the parties to include the term "demotion" because the contract only concerns full time employees. To allow the District to prevail in this matter would be a violation of the basic premise of good faith bargaining. The parties bargained to maintain the employment of *all* members of the bargaining unit. That employment is *full* time employment. The District, by demoting these three individuals, did not abide by the agreement. If the District wishes to have part-time professional employees, it must so bargain.

Arbitrator's decision, p. 20 (emphasis in original). Accordingly, the arbitrator sustained the grievances and issued an award in favor of the Association, reinstating all three employees to full-time positions and awarding back pay and benefits.

The District filed a petition to vacate the arbitrator's award with the trial court, asserting that: (1) under the doctrine of election of remedies, the employees were limited to proceeding with a hearing before the school board; and

5

(2) the arbitrator erred in applying a contract law analysis instead of determining whether the demotions were arbitrary or discriminatory, i.e., the standards applicable under Section 1151 of the School Code.

Relying on *West Middlesex Area School District v. Pennsylvania Labor Relations Board*, 423 A.2d 781 (Pa. Cmwlth. 1980), the trial court concluded that the doctrine of election of remedies did not bar the Association from pursuing a remedy under the CBA. As to the second issue, the trial court applied the essence test and concluded that the arbitrator's award draws its essence from the parties' agreement. The trial court further determined that the arbitrator's interpretation (that the Association bargained to maintain employment of all of its members and that a demotion to a part-time position was contrary to the CBA) was rationally derived from the collective bargaining agreement. Accordingly, the trial court denied the District's petition to vacate the arbitrator's award, and the District now appeals to this Court.

A court reviewing an arbitrator's award applies the two-pronged essence test. "First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement." *State System of Higher Education (Cheyney University) v. State College and University Professional Association (PSEA-NEA)*, 743 A.2d 405, 413 (Pa. 1999).[3]

---

[3] Notwithstanding our circumscribed scope of review, the District asserts that the trial court's decision includes statements that are not supported by the record or the law. The District complains that the trial court mischaracterized the CBA as "comprehensive" and improperly concluded that the Association had bargained for the continued employment of its members. **(Footnote continued on next page…)**

6

The District argues that the School Code is incorporated by law into the CBA[4] and that Section 1151 of the School Code both authorizes demotions and provides a specific and exclusive remedy for employees to contest a demotion. Relying on *Mifflinburg Area Education Association v. Mifflinburg Area School District*, 724 A.2d 339, 342-43 (Pa. 1999) (stating that Section 703 of PERA, 43 P.S. §1101.703, prohibits parties from implementing collective bargaining agreement provisions that are inconsistent with or conflict with any statute), the District contends that the arbitrator's award is inconsistent with Section 1151 of the School Code. Further, the District maintains that under Section 1151, the appropriate standard of review is whether the demotion was made in an arbitrary or discriminatory manner. The District argues that the arbitrator erred in failing to apply that standard and in considering, instead, that demotions are not contemplated by the CBA. Based on these assertions, the District characterizes the arbitrator's award as contrary to law and public policy.

---

**(continued…)**

The District further contends that the trial court erred in concluding that terms regarding part-time employment are issues to be negotiated and bargained for. Instead, the District asserts that the absence of such terms is a result of the Association's choice not to certify any part-time employees as part of its bargaining unit with the Pennsylvania Labor Relations Board (PLRB). According to the District, the trial court's analysis allows unions to exclude part-time employees and thereby foreclose districts from ever demoting full-time professionals into part-time positions, under the reasoning that no part-time positions were bargained for in the CBA. However, the District acknowledges that a school district can employ a part-time employee without the union having certification to represent part-time employees and that nothing in the CBA prevents the District from hiring part-time employees.

The Association does not respond directly to these assertions but argues, correctly, that the arbitrator's award must be reviewed under the essence test. *Cheyney University.*

[4] Section 1121 of the School Code, 24 P.S. §11-1121.

However, it is well settled that a court may vacate an arbitrator's award only if it violates the essence test. *Cheyney University.* In setting forth the essence test, our Supreme Court stated as follows:

> [W]e believe that the role for a court reviewing a challenge to a labor arbitration award under [PERA] is one of deference. We hold that in light of the many benefits of arbitration, there is a strong presumption that the Legislature and the parties intended for an arbitrator to be the judge of disputes under a collective bargaining agreement. That being the case, courts must accord great deference to the award of the arbitrator chosen by the parties. A fortiori, in the vast majority of cases, the decision of the arbitrator shall be final and binding upon the parties. However, there exists an exception to this finality doctrine. The arbitrator's award must draw its essence from the collective bargaining agreement. Pursuant to the essence test as stated today, a reviewing court will conduct a two-prong analysis. First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.

*Id.* at 413.

Additionally, "[a]n arbitration award will not be upheld if it contravenes public policy." *New Kensington-Arnold School District v. New Kensington-Arnold Education Association*, 140 A.3d 726, 736 (Pa. Cmwlth.

8

2016).[5] The public policy argument typically arises where an employer alleges that an arbitrator's award precludes the employer from carrying out its lawful obligation and duties to the public. In this instance, however, other than using the phrase "public policy," the District offers no argument relevant to an analysis of the public policy exception to the essence test. Indeed, the District does not address the essence test, but argues instead that the dispute is governed exclusively by a statutory provision.

The District also argues that the election of remedies doctrine bars arbitration of this matter because the employees who were reassigned chose to have a hearing before the school board. "An election of remedies includes the deliberate and knowing resort to one of two inconsistent paths to relief." *West Middlesex Area School District*, 423 A.2d at 783. In *West Middlesex*, this Court affirmed a trial court's order upholding the PLRB's determination that a school district's refusal to submit a professional employee's grievance to binding

---

[5] Determining whether an arbitrator's award violates public policy involves the following three-step analysis:

> First, the nature of the conduct leading to the discipline must be identified. Second we must determine if that conduct implicates a public policy which is well-defined, dominant, and ascertained by reference to the laws and legal precedents and not from general consideration of supposed public interests. Third, we must determine if the arbitrator's award poses an unacceptable risk that it will undermine the implicated policy and cause the public employer to breach its lawful obligations or public duty, given the particular circumstances at hand and the factual findings of the arbitrator.

140 A.3d at 736 (quoting *City of Bradford v. Teamsters Local Union No. 110*, 25 A.3d 408, 414 (Pa. Cmwlth. 2011)).

9

arbitration was an unfair labor practice under Section 1201(a)(5) of PERA.[6]  The employee in that case was working as a home school visitor.  The district's school superintendent, citing declining enrollment and economic factors, recommended the elimination of the home school program and the transfer of the employee to a classroom teaching position.  The employee was notified that action on the recommendation would be taken at the next school board meeting.  He attended that meeting, at which the school board advised him that it was observing the procedural formalities required by Section 1151 of the School Code.  The school board voted to accept the superintendent's recommendation.

The employee then filed a grievance alleging that the school board's action violated the parties' collective bargaining agreement.  The school board refused to participate in arbitration, arguing that the employee's exclusive remedy was his right to a school board hearing and then an appeal to the Secretary of Education.[7]  The PLRB concluded that the district's refusal to arbitrate was an unfair labor practice, and the trial court agreed.  On further appeal, this Court also affirmed.

We first observed that:

> With particular reference to public school districts, the Supreme Court has held that a school district may agree in a collective bargaining agreement to submit to arbitration the propriety of discharging a non-tenured teacher, and in so deciding rejected the argument that such a provision illegally delegated to an arbitrator powers to remove employes conferred exclusively on the school board by provisions of the [School Code].  The

---

[6] 43 P.S. §1101.1201(a)(5).

[7] Section 1131 of the School Code, 24 P.S. §11-1131.

[School Code] is not the exclusive remedy for redressing a personnel action and the collective bargaining agreement could provide another.

*West Middlesex,* 423 A.2d at 783 (citation omitted).

We next addressed the district's argument that arbitration was barred by the doctrine of election because the employee elected to pursue his remedy under the School Code. We observed that the employee did not ask for a board hearing; his transfer did not take place until after the district acted on the superintendent's recommendation at the close of the hearing; and the employee pursued only his contractual remedy after the hearing.

We explained that:

[T]he doctrine of election applies only when the available remedies are inconsistent; and to be inconsistent the remedies in question must be different means of adjudicating the same issues. The remedy provided to a professional employe threatened with demotion by Section 1151 of the [School Code] - a hearing before the board and appeal to the Secretary of Education - tests only whether the proposed demotion action is arbitrary or based on improper motives. . . . The grievance and arbitration procedure provided by the collective bargaining agreement which [the employee] sought to invoke on the other hand searches for whether the school board's action was for just cause. . . . Since the substantive issues under the remedy provided by the bargaining agreement on the one hand and by Section 1151 of the [School Code] on the other are different, [the employee's] resort to grievance after attending the school board's Section 1151 hearing was not the pursuit of an inconsistent remedy.

423 A.2d at 783-84.

Here, although two of the employees affirmatively opted for a school board hearing, they withdrew their requests and notified the District that they would be pursuing a different remedy. Indeed, the District's superintendent

11

informed the school board days before the June 16 meeting that the employees had withdrawn their requests for a hearing.

More important, the doctrine of election of remedies applies only when the available remedies are inconsistent, and to be inconsistent the remedies "must be different means of adjudicating the same issues." *Id*. at 783-84. The remedy provided by Section 1151 of the School Code "tests only whether [a] proposed demotion action is arbitrary or based on improper motives." *Id.* In contrast, the grievance and arbitration procedure provided under the CBA addresses whether the demotions violated the parties' bargained-for agreement. The remedies are not inconsistent, and, therefore, arbitration was not barred by the doctrine of election of remedies.

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Northeast Bradford School District,　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Appellant　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　v.　　　　　　　:　No. 2007 C.D. 2016
　　　　　　　　　　　　　　　　　　　　　　:
Northeast Bradford Education　　　　　　:
Association, PSEA/NEA　　　　　　　　　:


O R D E R


　　　　AND NOW, this 28<u>th</u> day of <u>June</u>, 2017, the order of the Bradford County Court of Common Pleas, dated November 2, 2016, is AFFIRMED.


　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　MICHAEL H. WOJCIK, Judge