James P. TROUTMAN, in his capacity as Clerk of Courts of Berks County, Mark C. Baldwin, in his capacity District Attorney of Berks County, Ellie Antoine, in her capacity as Recorder of Deeds of Berks County, Lawrence Medaglia, Jr., in his capacity as Register of Wills and Clerk of Orphans Court of Berks County, Barry J. Jozwiak, in his capacity as Sheriff of Berks County, Dr. Nicholas Bybel, in his capacity as Coroner of Berks County, Marianne R. Sutton, in her capacity as Prothonotary of Berks County, Nelson H. Long, in his capacity as Treasurer of Berks County, and The County of Berks, ex rel. The Board of Commissioners of Berks County, Appellants

v.

AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, DISTRICT COUNCIL 88, AFL–CIO.

Commonwealth Court of Pennsylvania.

Argued Dec. 11, 2013.

Decided March 13, 2014.

As Amended March 13, 2014.

Joel S. Barras, Philadelphia, for appellants.

Amy L. Rosenberger, Philadelphia, for appellee.

BEFORE: PELLEGRINI, President Judge, and McGINLEY, Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge LEAVITT.

Various Row Officers [1] of Berks County and the Board of Commissioners of Berks County (collectively, Row Officers) appeal an order of the Court of Common Pleas of Berks County (trial court) that granted a motion for summary judgment filed by the American Federation of State, County and Municipal Employees, District Council 88, AFL–CIO (Union) in a declaratory judgment action. The trial court also denied a motion for summary judgment filed by Row Officers. The trial court held that Row Officers were obligated to comply with provisions in the collective bargaining agreement relating to the discharge and discipline of employees and to the procedures for filling vacant positions. Because the trial court's order infringes upon Row Officers' statutory right to hire, fire and supervise their employees under Section 1620 of the County Code (also known as Act 115),[2] we reverse the grant of summary judgment to Union, vacate the denial

---

1. The individual appellant Row Officers are: James P. Troutman, Clerk of Courts; Mark C. Baldwin, District Attorney; Ellie Antoine, Recorder of Deeds; Lawrence Medaglia, Jr., Register of Wills and Clerk of Orphans Court; Barry J. Jozwiak, Sheriff; Dr. Nicholas Bybel, Coroner; Marianne R. Sutton, Prothonotary; and Nelson H. Long, Treasurer.

2. Act of June 29, 1976, P.L. 460, § 1, No. 115 (Act 115), 16 P.S. § 1620.

of summary judgment to Row Officers and remand for further proceedings.

## Background

The parties stipulated to the facts that are relevant to this appeal, and a summary follows. The County and Row Officers are joint employers under the Public Employe Relations Act (PERA)[3] of all employees of Row Officers who are represented by Union. In 1994, the County and Union entered into a collective bargaining agreement effective January 1, 1995, through December 31, 1999 (1995 CBA), that governed qualifications, including seniority, for vacant positions. Shortly thereafter, some Row Officers began filling vacant positions without following the seniority provisions in the 1995 CBA. On March 9, 1995, Union filed an unfair labor practice charge with the Pennsylvania Labor Relations Board (Board), asserting that the manner by which Row Officers filled the vacant positions conflicted with the seniority provisions contained in the 1995 CBA. In defending against the unfair labor practice charge, Row Officers asserted that Section 1620 of the County Code gives them complete autonomy over filling vacant positions and that, to the extent the seniority provisions contained in the 1995 CBA conflicted with Section 1620, those provisions were illegal and void.

The Board found in Union's favor, holding that the County's repudiation of the seniority provisions in the CBA was unlawful. The County and several Row Officers petitioned the trial court for review of the Board's decision, and the trial court vacated the Board's order. Union and the Board then appealed to this Court.

This Court reversed the decision of the trial court, holding that Row Officers were bound by the seniority provisions in the 1995 CBA. *Troutman v. Pennsylvania Labor Relations Board,* 735 A.2d 192 (Pa. Cmwlth.1999), *appeal denied,* 563 Pa. 624, 757 A.2d 937 (2000) (*Troutman I* ). We so held because the record showed that Row Officers had tacitly acquiesced to the seniority provisions in the 1995 CBA. Notably, we did not directly address the question of whether Row Officers would have been bound by the seniority provisions in the 1995 CBA had they raised a specific objection to them during the bargaining process. Likewise, we did not address the related issue of whether Row Officers could insist that the County Commissioners heed their instructions not to bind them to the seniority provisions, had such instructions been given.

On May 1, 1998, while the litigation in *Troutman I* was still pending, James Troutman, in his capacity as the County's Clerk of Courts, sent a letter to the County Commissioners which stated as follows:

In regard to the current Collective Bargaining Agreement between the County and [Union], and acknowledging that this will expire the end of next year, *I wish to state that I do not authorize any negotiation on behalf of myself in regard to the hiring, termination or supervision of employees in my office.* I believe that you are aware of my position previously and are now aware of the lawsuit involving my colleagues and [Union]. I see no reason to restate that entire case; however, it is my position that the authority granted to you under the County Code shall be specifically complied with and that your negotiation on my behalf shall only concern wages and conditions of employment and shall exclude matters as set forth in the County Code.

Reproduced Record at 8a–9a (R.R. ——) (emphasis added). Soon thereafter, sever-

---

**3.** Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301.

al other Row Officers submitted similar letters to the County Commissioners.[4] Row Officers desired the County Commissioners to bargain to the result that Row Office employees would be at will employees.

In spite of these directives from Row Officers, the County Commissioners negotiated Articles 28, 29 and 33 into the next CBA, *i.e.,* the 2000 CBA. Row Officers specifically objected to these three provisions which, collectively, are referred to as the "Disputed Provisions."

Article 28 is titled "Discharge, Demotion, Suspension and Discipline." R.R. 56a. In relevant part, Section 28.1 of Article 28 provides as follows:

The Employer shall not demote, suspend, discharge or take any disciplinary action against an employee without just cause.

*Id.* Article 29 is titled "Seniority." R.R. 57a. Section 29.1 of Article 29 provides for two types of seniority:

1. AFSCME Bargaining Seniority—an employee's continuous length of service with the employer in an AFSCME bargaining unit.

2. Department Seniority—an employee's length of continuous service in a department.

*Id.* Section 29.3(E) requires that job vacancies be awarded to the employee with the most department seniority. R.R. 58a. If no one with department seniority applies, then the job is to be awarded to the employee with the most AFSCME bargaining unit seniority. Article 29 further sets forth procedures for job bidding and job displacement (bumping).

Article 33 is titled "Grievance and Arbitration." R.R. 64a. It sets forth the steps in submitting a grievance and initiating arbitration.

Row Officers contend that their right to hire, fire and supervise their employees under Section 1620 has been eviscerated by Article 28's requirement that discipline be supported by just cause and by Article 29's requirements that Row Officers fill vacant positions based on seniority and submit to bidding and bumping procedures. Relatedly, Row Officers argue that they should not be subject to grievance and arbitration procedures, which are set forth in Article 33, for disputes arising under Articles 28 and 29.

Because of the outstanding dispute over the proper application of Section 1620, the parties decided to agree on the remaining provisions of a new agreement while they pursued a judicial resolution of how Section 1620 affects collective bargaining. Accordingly, in August of 2001, the County, Union and Row Officers executed an agreement (Side Agreement) by which it was agreed that the County and Row Officers would institute the instant declaratory judgment action. The parties further agreed that any grievance filed by Union alleging a Row Officer's violation of the Disputed Provisions of the collective bargaining agreement would be held in abeyance pending the conclusion of the declaratory judgment action. The Side Agreement has remained in effect since its execution.

With respect to each collective bargaining agreement that followed the 2000 CBA, each Row Officer has sent letters to the County Commissioners renewing his or her objection to

the continuation of any provision contained in the current agreement which constitutes an infringement upon my

4. Union filed more unfair labor charges with the Board, asserting that Row Officers' instructions to the County Commissioners violated the duty of Row Officers to bargain under PERA. Those charges are pending, awaiting the outcome of the instant appeal.

right to hire, fire and supervise any employees under Section 1620 of the County Code. . . .

R.R. 11a. Pursuant to the Side Agreement, over 30 grievances have been held in abeyance pending the outcome of the parties' declaratory judgment action.

On March 18, 2013, the trial court heard argument on the parties' cross-motions for summary judgment. The trial court denied Row Officers' motion and entered judgment in favor of Union. The trial court held that Row Officers were obligated to bargain with Union through their statutorily designated bargaining representatives, the County Commissioners, on the subject matter set forth in the Disputed Provisions of the CBA. The trial court further held that, pursuant to the Side Agreement, grievances contesting Row Officers' alleged violation of the Disputed Provisions must be processed in accordance with Article 33 of the successive CBAs. Finally, the trial court held that unless and until the Disputed Provisions are amended through collective bargaining, they bind Row Officers. Row Officers appealed to this Court.

## Issues on Appeal

On appeal,[5] Row Officers raise two issues. First, they claim the trial court erred in holding that the Disputed Provisions of the CBA are enforceable notwithstanding Row Officers' express objections to them. Relatedly, Row Officers contend that the trial court erred because its decision is based upon the inclusion of the Disputed Provisions in CBAs that pre-existed Row Officers' reservation of their Section 1620 rights. By doing so, Row Officers contend that the trial court ignored this Court's holding in *Troutman I* that a waiver or retention of Section 1620 rights is effective only until the negotiation and execution of the successor CBA. Second, Row Officers argue the trial court erred by not reaching, or deciding, the issue of whether Row Officers had objected, and not acquiesced, to the Disputed Provisions for the contracts that followed the 1995 CBA.[6]

## Applicable Statutory Law

■ We begin with Section 7533 of the Declaratory Judgments Act, which states that any person asserting rights under a statute may request a court to establish the meaning of the statute and the individual's rights thereunder. 42 Pa.C.S. § 7533.[7] To sustain a declaratory judgment action, the plaintiff "must demon-

---

5. This Court's standard of review of a grant of summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *Cochrane v. Kopko*, 975 A.2d 1203, 1205 (Pa.Cmwlth. 2009). Our scope of review is plenary and we apply the same standard for summary judgment as the trial court. *Id.* A grant of summary judgment is only appropriate where the record clearly shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Farabaugh v. Pennsylvania Turnpike Commission*, 590 Pa. 46, 52 n. 3, 911 A.2d 1264, 1267 n. 3 (2006).

6. The trial court did not decide this issue because it found Row Officers had to bargain

with the Union over the subject matter of the Disputed Provisions.

7. Section 7533 of the Declaratory Judgments Act states:

Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder.

42 Pa.C.S. § 7533. "The Declaratory Judgments Act is remedial in nature and its pur-

strate an 'actual controversy' indicating imminent and inevitable litigation and a direct and substantial present interest." *Unified Sportsmen of Pennsylvania v. Pennsylvania Game Commission,* 950 A.2d 1120, 1132 (Pa.Cmwlth.2008).

This case concerns the application of Section 1620 of the County Code, which provides, in full, as follows:

> The salaries and compensation of county officers shall be as now or hereafter fixed by law. The salaries and compensation of all appointed officers and employes who are paid from the county treasury shall be fixed by the salary board created by this act for such purposes: Provided, however, That with respect to representation proceedings before the Pennsylvania Labor Relations Board or collective bargaining negotiations involving any or all employes paid from the county treasury, the board of county commissioners shall have the sole power and responsibility to represent judges of the court of common pleas, the county and all elected or appointed county officers having any employment powers over the affected employes.
>
> *The exercise of such responsibilities by the county commissioners shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employes as may be vested in the judges or other county officers.*

16 P.S. § 1620 (emphasis added).

This case also implicates Section 903 of PERA, which mandates a grievance and arbitration procedure for resolution of disputes under a CBA. It states:

> Arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining

agreement is mandatory. *The procedure to be adopted is a proper subject of bargaining with the proviso that the final step shall provide for a binding decision by an arbitrator or a tri-partite board of arbitrators as the parties may agree. Any decisions of the arbitrator or arbitrators requiring legislation will only be effective if such legislation is enacted[.]*

43 P.S. § 1101.903 (emphasis added).

## Enforceability of Disputed Provisions

In their first issue, Row Officers contend that the trial court erred in holding that the Disputed Provisions of the CBA are enforceable even though Row Officers instructed the County Commissioners not to agree to any limitation on their Section 1620 rights. The trial court reasoned that because the Disputed Provisions were contained in the 1995 CBA, Row Officers had waived their right to object to them in successor agreements. Row Officers argue that there is no foundation in the record for the trial court's finding that Row Officers had waived their right to challenge the Disputed Provisions. Further, Row Officers argue that Section 1620 of the County Code gives them the sole authority to hire, fire and supervise employees within their offices. Unless they voluntarily relinquish that authority, provisions in the CBA that purport to limit that authority are unenforceable. Row Officers contend that this Court held as much in *Westmoreland County v. Westmoreland County Detectives,* 937 A.2d 618 (Pa. Cmwlth.2007).

In *Westmoreland County,* the county commissioners represented the district attorney in negotiations with the county detectives' union for a CBA. The district attorney expressly reserved his Section

pose is to provide relief from uncertainty and establish various legal relationships." *Curtis*

*v. Cleland,* 122 Pa.Cmwlth. 328, 552 A.2d 316, 318 (1988).

1620 rights. The parties reached impasse and proceeded to interest arbitration. The arbitration panel issued an award that included a requirement that any discharge, demotion or discipline of a detective must be supported by just cause. The county appealed, arguing that the just cause provision ordered by the arbitrators violated the district attorney's rights under Section 1620. The trial court agreed and struck the just cause provision from the award.

On appeal, the union argued that Section 1620 made the county commissioners the sole collective bargaining agent for the district attorney as well as for the county's other row officers. It also argued that Section 1620 did not mean that the row officers had to collectively bargain only on the financial terms of employment. Rather, it meant that the county commissioners must obtain input from the row officers during collective bargaining on the issue of discipline, but it did not remove that issue from the bargaining table.

While agreeing that, generally, the permissible subjects of bargaining are not limited to wages, hours and benefits, this Court explained that "Section 1620 render[s] unenforceable [CBAs] which seek to impair a row officer's power to supervise, hire, and fire personnel." *Westmoreland County*, 937 A.2d at 622. Further, the "courts have uniformly upheld the rights of judges and county officers to hire, fire, and supervise their employees, and have invariably dismissed those portions of [CBAs] which posed even the potential for infringement upon those rights." *Id.* We stated that the just cause provision involved discharge and supervision and that the district attorney had specifically reserved his Section 1620 rights. Accordingly, we held that the just cause provision exceeded the powers and the jurisdiction of the interest arbitration panel.

Row Officers also cite this Court's decision in *Northumberland County Commissioners v. American Federation of State, County and Municipal Employees, AFL–CIO Local 2016, Council 86*, 71 A.3d 367 (Pa.Cmwlth.2013), as instructive on the application and implementation of their Section 1620 rights. In *Northumberland County*, during 2006 negotiations for a CBA, the prothonotary sent a memorandum to the county commissioners informing them that she "did not want the CBA to 'encroach or diminish' her statutory rights to hire, discharge, and supervise employees." *Id.* at 370. When the union and the county commissioners reached an impasse, they submitted to interest arbitration.

At the arbitration hearing, the prothonotary testified about the then-existing "just cause" provision that "had been carried over from an earlier CBA between the parties." *Id.* She explained that she was troubled by the just cause provision because it did not authorize her to terminate an employee immediately for egregious misconduct. Persuaded by the prothonotary's argument, the arbitration panel amended the just cause provision in the CBA to provide for an employee's immediate termination for certain enumerated acts. Neither party appealed the interest arbitration award.

In 2009, the prothonotary terminated a clerk, and the union filed a grievance, asserting that the prothonotary lacked just cause for the termination. The arbitrator found that the prothonotary had waived her Section 1620 rights with respect to the just cause provision. The grievance arbitrator reasoned that the prothonotary's instruction to the county commissioners was vague; it was her responsibility to give specific instructions on the specific supervisory rights she wanted to retain. Further, and more importantly, the pro-

thonotary's own testimony at the interest arbitration proceeding revealed that she was willing to accept some limitation on her ability to discharge an employee. She specifically testified that she had no desire to retain the right to discharge an employee arbitrarily or for no reason at all.

On appeal, the trial court vacated the arbitrator's award, finding that the CBA infringed on the prothonotary's Section 1620 rights and, thus, was unenforceable. The union appealed to this Court, and we reversed.[8]

We explained that "row officers, through collective bargaining, can voluntarily restrict their rights under Section 1620 of the [County] Code to hire, discharge, and supervise their employees." *Northumberland County*, 71 A.3d at 376. This can be done by passive acquiescence or a failure to challenge an interest arbitration award that purportedly infringed on their rights. *Id.* at 377. The county commissioners, as the bargaining agent, were required to give the prothonotary an opportunity to object to proposed provisions. Because the prothonotary had testified that she did not wish to retain the right to terminate an employee arbitrarily, she had agreed to a limitation on her Section 1620 rights. As such, the arbitrator did not err. Further, there was no indication that the prothonotary "requested the County, as its exclusive bargaining agent, to appeal the interest arbitration award." *Id.* at 378.

Row Officers argue that their situation is different from that considered in *Nor-*

*thumberland County.* Unlike the prothonotary in *Northumberland County*, they did not passively acquiesce to the Disputed Provisions. They objected, in writing and with specificity, to Articles 28, 29, and 33. Accordingly, the County Commissioners, as the bargaining agent, had no right to agree to any CBA provision infringing upon their Section 1620 rights, even if an impasse necessitated interest arbitration. Further, *Northumberland County* established that where (1) an arbitration award includes provisions that infringe upon a row officer's rights and (2) the row officer requests it be appealed, the county must appeal the interest arbitrator's award.[9]

In response, Union contends, first, that Section 1620 does not relieve Row Officers of their obligations under PERA to bargain on the subject matter of the Disputed Provisions. Union points out that the obligation to bargain is imposed upon virtually every other public employee in this Commonwealth, save those in the employ of the judiciary. Union asserts that Section 1620 did not relieve county row officers from their obligation to bargain; it simply made the county commissioners their representative in this bargaining process.

Union points to our Supreme Court's decision in *Ellenbogen v. County of Allegheny*, 479 Pa. 429, 388 A.2d 730 (1978), which was a declaratory judgment action initiated by judges of the Court of Common Pleas of Allegheny County to identify their representative for purposes of collec-

---

8. We also remanded for the trial court to address additional issues not relevant to the present case.

9. Row Officers argue that *Northumberland County* is supported by numerous decisions of this Court, including *Rebert v. York County Detectives Association*, 909 A.2d 906 (Pa. Cmwlth.2006), and *Lackawanna County v. Lackawanna County Deputy Sheriff's Associa-*

tion, (Pa.Cmwlth., No. 487 C.D. 2007, 2008 WL 9405103, filed May 13, 2008), *petition for allowance of appeal denied*, 600 Pa. 736, 963 A.2d 472 (2008) (*Lackawanna County* was heard *en banc*, resulting in a vote of 4 to 3 to affirm. However, a vacancy occurred on the Court prior to circulation and a tie vote resulted. The case may be cited only for its persuasive value; notably the Supreme Court denied *allocatur*).

tive bargaining for certain court-related employees. In *Ellenbogen*, the Supreme Court held that the county commissioners were the exclusive representative of management in collective bargaining under the PERA that involved court employees paid from county funds. However, the Supreme Court also held that although the county commissioners had the exclusive authority to represent management in collective bargaining, this did not mean that the commissioners could negotiate away the right of the judges to hire, discharge and supervise these employees. The Supreme Court explained that this was necessary to maintain the independence of the judiciary.

Union argues that *Ellenbogen* established that the county commissioners are the exclusive representative of all county officials without limitation. It acknowledges that the Supreme Court held that the PERA cannot limit the authority of judicial officers to discharge their employees, but it contends that this conclusion was based on the constitutional doctrine of separation of powers embodied in Article V, Section 1 of the Pennsylvania Constitution. *See Eshelman v. Commissioners of County of Berks*, 62 Pa.Cmwlth. 310, 436 A.2d 710 (1981), *affirmed without opinion*, 502 Pa. 430, 466 A.2d 1029 (1983); *Beckert v. American Federation of State, County and Municipal Employees, District Council 88, AFL–CIO*, 56 Pa.Cmwlth. 572, 425 A.2d 859 (1981), *affirmed without opinion*, 501 Pa. 70, 459 A.2d 756 (1983). Union claims that this logic is not applicable to the present dispute, which is governed by Section 1620, not separation of powers.

Union also cites *Pennsylvania Labor Relations Board v. Della Vecchia*, 517 Pa. 349, 537 A.2d 805 (1988), wherein the Supreme Court held that a collective bargaining agreement negotiated directly between a row officer and the union was unenforceable under the PERA because Section 1620 mandated collective bargaining had to be done through the county commissioners. In reaching that determination the Supreme Court observed that,

> under the terms of PERA, collective bargaining is to be accomplished solely through the County Commissioners. *The final collective bargaining agreement should ideally cover all aspects bargainable under PERA and should be entered into only after the Commissioners have received input from the respective row officers.* An agreement such as the one before us, however, entered into without the consent or ratification of the County Commissioners, cannot be deemed a collective bargaining agreement under PERA since it is entered into by one who is not authorized to do so under PERA, § 1620 of the County Code, or the holdings of this Court. To allow otherwise would deviate from the stated intent of having all bargaining with the County emanate from one voice, i.e. the Commissioners, by inviting unwarranted piecemeal bargaining amongst individual row officers and the union, and, more importantly, would create chaos in the orderly process of determining and providing for both budgetary and other economic and employment matters within the Counties' purview. We again emphasize that such a result is directly contrary to the public policy underlying PERA.

*Id.* at 356, 537 A.2d at 808–09 (footnote omitted) (emphasis added). Union argues that in *Della Vecchia*, the Supreme Court established that row officers cannot refuse their bargaining agent, the county commissioners, the ability to bind them to provisions that limit their Section 1620 rights to hire, fire and supervise employees.

Union contends that the cases cited by Row Officers do not answer the question of

whether Row Officers were obliged to bargain over the subject matter of the Disputed Provisions. Thus, Union claims that the trial court correctly held that the scope of matters subject to collective bargaining is not limited by Section 1620.

## Analysis

■ We turn, then, to resolution of the question of whether county commissioners may bind row officers to provisions that implicate Section 1620 rights over the objections of those row officers. We find two cases instructive, in addition to those discussed above. They are *Rebert v. York County Detectives Association*, 909 A.2d 906 (Pa.Cmwlth.2006), and *Lackawanna County v. Lackawanna County Deputy Sheriff's Association*, (Pa.Cmwlth., No. 487 C.D.2007, 2008 WL 9405103, filed May 13, 2008).

In *Rebert*, a dispute arose over whether a newly hired detective could be scheduled to work hours that deviated from those contained in the CBA. Notably, the CBA exempted disputes relating to the hiring and supervision of employees from the CBA's grievance procedure. The district attorney argued that the county commissioners could not negotiate a CBA that compromised his ability to direct the hours of a detective, a Section 1620 right, because he did not agree to such a compromise. The arbitrator found that Section 1620 was not implicated. On appeal, the trial court found that the district attorney had reserved his Section 1620 rights. However, it was still the district attorney's obligation to appeal the interest arbitration award on hours, and he had failed to do so. This Court affirmed.

We explained that work hours are a mandatory subject of bargaining. The county commissioners must submit the proposed work schedule for row office employees to interest arbitration where there

is no agreement, and the row officer must appeal the award in order to preserve his Section 1620 rights. In *Rebert*, the work hours were established by interest arbitration. Because the district attorney did not appeal the award, he was powerless to repudiate the terms contained in the CBA.

In *Lackawanna County*, the county and the union were parties to successive CBAs that covered the conditions of employment of the deputy sheriffs. The sheriff provided a county commissioner with a letter outlining his objections with respect to the CBA provisions relating to the hiring and supervision of employees. The matter then proceeded to interest arbitration, which resulted in an award placing numerous limits upon the sheriff's right to supervise his deputies. The award also contained a provision that allowed either party to request that the matter be reopened. The sheriff timely requested that the county reopen the matter, but nothing happened. In February of 2005, the union filed a grievance because the sheriff was not posting or bidding shift work in accordance with the CBA.

The matter went to grievance arbitration, and the arbitrator held that the sheriff was obligated to follow the CBA. The arbitrator reasoned that the county was empowered to bind the sheriff on matters of employee supervision. The trial court vacated the award because the sheriff had not consented to the disputed language in the CBA and had not given the county commissioners permission to bind him to any limitation on his Section 1620 rights. The union then appealed to this Court, arguing that the county commissioners had consulted with the sheriff during negotiations, thus meeting all their obligations. Further, because the sheriff did not appeal the interest arbitration award, the CBA had to be enforced. This Court reversed.

In doing so, we acknowledged that the county commissioners are the exclusive representatives for the row officers in negotiations under PERA. However, we explained that it is equally "clear" that matters related to the hiring, discharge and supervision rights of judicial officers or row officers "are not bargainable items, although a judicial officer or row officer may voluntarily cede some control." *Lackawanna County*, slip op. at 17. In that regard, we pointed to *Erie County v. Pennsylvania Labor Relations Board*, 908 A.2d 369, 375 (Pa.Cmwlth.2006), where we found that "bumping rights" were not a mandatory subject of bargaining because the sheriff had invoked his Section 1620 rights. We determined that it was established that "the statutory right of courts and row officers to hire their staff was very plainly acknowledged and protected." *Erie County*, 908 A.2d at 375.

In *Lackawanna County*, we also rejected the union's claim that a county may bind the sheriff as long as it consulted with him during the negotiating process. Likewise, we rejected the union's claim that *Troutman I* established that the county commissioners need only consult with the row officers but do not need to obtain their consent to provisions limiting Section 1620 rights. We explained that county commissioners lack authority to limit the hiring, discharge and supervision rights of row officers. "Simply put, these matters are not bargainable." *Lackawanna County*, slip op. at 21. We held *Troutman I* to be distinguishable because in that case the row officers had failed to raise specific objections to the language contained in the CBA.[10]

Union argues that the principles of *Ellenbogen* are limited to judges by reason of

separation of powers. However, in *Della Vecchia*, the Supreme Court stated the opposite:

> While the factual context of *Ellenbogen* and its progeny involved judges of the Courts of Common Pleas, § 1620 and the aforementioned cases interpreting both § 1620 and PERA clearly include the County Row Officers within the same purview. It is clear, therefore, that the same logic as well as the result obtain.

*Della Vecchia*, 517 Pa. at 356 n. 3, 537 A.2d at 809 n. 3.

■ Applying the tenets of the above-reviewed precedent, we conclude that the County Commissioners are the sole representatives of Row Officers for purposes of bargaining under PERA. In fulfilling that responsibility, the County Commissioners may enter into a CBA that limits the hiring, discharge and supervision rights of a Row Officer, but only where Row Officers have tacitly or expressly consented. Here, because Row Officers have expressly asserted their Section 1620 rights and objected to the Disputed Provisions of the CBA, the County Commissioners lacked authority to bargain those rights away. They should have submitted the Disputed Provisions to interest arbitration. Had this been done and a Row Officer objected to the award, it would have become incumbent upon the County Commissioners or the Row Officer to appeal the interest arbitration award in order to preserve Section 1620 rights.

**Whether the Row Officers Tacitly Relinquished their Section 1620 Rights**

■ This brings us to Row Officers' second issue, in which they argue that the

---

10. We also concluded that the sheriff's failure to appeal the interest arbitration award did not bar an appeal because, unlike in *Rebert*, the terms of the CBA at issue contained a reopener.

trial court erred in not reaching, or deciding, whether Row Officers had objected, and not acquiesced, to the Disputed Provisions. *Northumberland County* and *Rebert* established that where a row officer has tacitly acquiesced to a limit on his Section 1620 rights, the county commissioners have the authority to bargain them away. If there is no such acquiescence, the county commissioners lack authority to bind a row officer to a provision that limits his hiring, discharge and supervision rights.

The parties' stipulation of facts established that in 1999 Row Officers specifically sought to retain their Section 1620 rights to the fullest extent permitted. Not only did they send letters to the County Commissioners objecting to any contract provision that imposed any limit upon their Section 1620 rights, they memorialized this in the 2001 Side Agreement. They specifically objected to the seniority and just cause provisions set forth in Articles 28, 29 and 33 of the 2000 CBA.[11] R.R. 166a. On these facts, it cannot be held that Row Officers tacitly acquiesced to the Disputed Provisions, as the trial court appears to

have assumed. Accordingly, the County Commissioners had no power to approve the Disputed Provisions on behalf of Row Officers. Rather, they were obligated to take the matter to interest arbitration as representatives of Row Officers, who objected to any limit on their Section 1620 rights as set forth in Articles 28, 29, and 33 of the 2000 CBA.

## Conclusion

In conclusion, we make several holdings. First, the County Commissioners lacked authority to bind Row Officers to Articles 28, 29 and 33 of the 2000 CBA and subsequent contracts over their objection. Second, when the County Commissioners were unable to secure Union's acquiescence to exempt Row Officers from the Disputed Provisions or, on the other hand, Row Officers' agreement to accept them, negotiations reached an impasse. At that point, the County Commissioners were required to continue to negotiate the Disputed Provisions or take them to interest arbitration in accordance with the provisions of the relevant labor statutes.[12]

---

**11.** The parties were still in negotiations regarding the 2000 CBA when the Side Agreement was signed in 2001. R.R. 166a. Thus, the Side Agreement references Articles 27, 28, and 32. These Articles became Articles 28, 29 and 33 of the completed 2000 CBA.

**12.** Interest arbitration is mandatory for police and firemen. *See* Section 1 of the Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. § 217.1, commonly referred to as Act 111. County detectives in the district attorney's office have been deemed police officers under Act 111. *Rebert*, 909 A.2d at 907. Section 805 of the PERA mandates interest arbitration for employees "necessary to the functioning of the courts." Section 805 states as follows:

> Notwithstanding any other provisions of this act where representatives of units of guards at prisons or mental hospitals or *units of employes directly involved with*

*and necessary to the functioning of the courts of this Commonwealth* have reached an impasse in collective bargaining and mediation as required in section 801 of this article has not resolved the dispute, the impasse shall be submitted to a panel of arbitrators whose decision shall be final and binding upon both parties with the proviso that the decisions of the arbitrators which would require legislative enactment to be effective shall be considered advisory only.

43 P.S. § 1101.805. In this case, it has not been established whether all employees of Row Officers can be categorized as either police officers or "employees directly involved with and necessary to the functioning of the courts." The County Commissioners must take the Disputed Provisions to interest arbitration only where mandated by statute. However, in every case, County Commissioners must uphold Section 1620 rights (when asserted) under the available or applicable

Third, had this procedure been followed and had Row Officers objected to the interest arbitration award, the County Commissioners had to appeal the award or allow Row Officers to appeal.

Accordingly, the trial court's order granting summary judgment in favor of Union is reversed, and its order denying Row Officers' motion for summary judgment is vacated. This matter is remanded to the trial court to enter declaratory judgment in favor of Row Officers in accordance with this opinion.[13]

### ORDER

AND NOW, this 13th day of March, 2014, the order of the Court of Common Pleas of Berks County, dated March 13, 2013, granting summary judgment to the American Federation of State, County and Municipal Employees, District Council 88, AFL–CIO in the above-captioned matter is hereby REVERSED and the order of the trial court denying summary judgment to the County and the above named Row Officers is hereby VACATED. This matter is REMANDED to the trial court to enter a declaratory judgment award on behalf of the County and the Row Officers, in accordance with the attached opinion.

Jurisdiction relinquished.

procedures, and Row Officers must assert their Section 1620 rights under the available or applicable procedures in order to preserve these rights.

13. We note that pursuant to the Side Agreement the parties have agreed that during the pendency of litigation the "then-current CBA governing 'Discharge, Demotion, Suspension and Discipline' and 'seniority' would remain in effect for Row Officers and their employees; provided however, that any grievance alleging a violation of one or both of those Articles by a Row Officer shall be held in abeyance pending the conclusion of the Litigation." R.R. 168a.