IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Schuylkill County,                      :
                    Petitioner          :
                                        :
            v.                          :   No. 1215 C.D. 2017
                                        :   Argued:  September 18, 2018
Pennsylvania Labor Relations            :
Board,                                  :
                    Respondent          :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ROBERT SIMPSON, Judge (P)
           HONORABLE ANNE E. COVEY, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                     FILED: November 14, 2018

Schuylkill County (County) petitions for review of an adjudication of the Pennsylvania Labor Relations Board (Board) holding that the County committed an unfair labor practice by refusing to arbitrate two grievances filed by the Schuylkill County Court Related Employees Union (Union).[1]  The County contends that the employees of the Clerk of Courts are exempt from the terms of the current collective bargaining agreement (CBA) because the Clerk of Courts did not agree to be bound by it.  Accordingly, there was no authority for the two employees dismissed by the Clerk of Courts to seek a grievance arbitration of whether she had just cause for their dismissal.  Discerning no merit to the County's contention, we affirm the Board.

In 2016, the Clerk of Courts discharged two employees, who were members of the County's bargaining unit.  The Union filed grievances to challenge the discharges.  When the parties could not resolve the grievances, the Union informed the County of its intent to proceed to arbitration, pursuant to the grievance and arbitration provisions in the CBA.

_____

[1] Union filed a notice of intervention with this Court on September 14, 2017.

On October 28, 2016, the County notified the Union by letter that it would not proceed to arbitration. The County explained that the grievance and arbitration provisions in the CBA had no application to the dismissal of the two employees. In support, it pointed to Section 1620 of The County Code,[2] which provides, in relevant part, as follows:

> That with respect to representation proceedings before the Pennsylvania Labor Relations Board or collective bargaining negotiations involving any or all employes paid from the county treasury, the board of county commissioners shall have the sole power and responsibility to represent judges of the court of common pleas, the county and all elected or appointed county officers having any employment powers over the affected employes. *The exercise of such responsibilities by the county commissioners shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employes as may be vested in the judges or other county officers.*

16 P.S. §1620 (emphasis added). The County asserted that Section 1620 assigned "employment powers" over the two affected employees to "other county officers," to wit, the Clerk of Courts.

On November 21, 2016, the Union filed an unfair labor practice complaint with the Board. The Union charged that the County violated the Public Employe Relations Act[3] by refusing to submit to grievance arbitration. The Board scheduled a hearing before a Hearing Examiner. However, the hearing was canceled based upon the filing of a joint stipulation of facts by the County and the Union.

The stipulation provided that the parties executed a CBA, effective January 11, 2011, through December 31, 2015, and that they are currently "engaged in collective bargaining negotiations and are proceeding to interest arbitration on a

[2] Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. §1620.

[3] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§1101.101 – 1101.2301.

new CBA." Stipulation ¶¶3-4; Reproduced Record at 9a (R.R. __). The CBA states that if a new contract is not reached "prior to January 1, 2016 the terms and conditions of this contract shall remain in full force and effect until such time as a new Agreement and/or arbitration is reached." Stipulation ¶5; R.R. 9a (quoting Article XXXIV of the CBA).

The CBA states that "[e]mployer shall not demote, suspend, discharge, or take any disciplinary action against employee without just cause." Stipulation ¶6; R.R. 10a (quoting Article XV of the CBA). It further states that "any dispute relating to the discipline of any of the Union's employees shall be settled by a step grievance procedure that concludes with arbitration…." Stipulation ¶7; R.R. 10a (citing Article XVI of the CBA). The CBA does not limit the ability of the Union to challenge a disciplinary action of a row officer. Stipulation ¶8; R.R. 10a. "The CBA makes no reference at all to Section 1620 of the County Code[.]" Stipulation ¶8; R.R. 10a.

Prior to the execution of the 2011-2015 CBA, the County Solicitor acted as the County's chief negotiator, and Stephen Lukach was the Clerk of Courts.[4] Stipulation ¶¶18-19; R.R. 11a-12a. The County Solicitor did not seek input from the elected row officers about their willingness to be governed by the CBA. Stipulation ¶19(a); R.R. 12a. At no time did either the Union or the County obtain Lukach's consent to be bound by the CBA with respect to the discharge of employees. Stipulation ¶19(b); R.R. 12a. At no time did Lukach, or any other row officer, contact the County about Section 1620. Stipulation ¶19(c); R.R. 12a.

Maria Casey, Esquire, took office as the Clerk of Courts on January 4, 2016. On January 5, 2016, she notified the County and the Union by letter that

_____

[4] Lukach resigned on April 17, 2014.

3

several provisions of the CBA, including Article XV, infringed on the Section 1620 rights of her office. Stipulation ¶9; R.R. 10a (letter at Exhibit B of Stipulation; R.R. 68a-69a). She objected to the continuation of any provision in the 2011-2015 CBA that was contrary to Section 1620. Stipulation ¶9; R.R. 10a.

On January 8, 2016, the Clerk of Courts dismissed Karen Rogers, a bargaining unit member, and on January 11, 2016, the Union filed a grievance challenging the termination. Stipulation ¶¶10-11; R.R. 10a. On July 27, 2016, the Clerk of Courts dismissed Michael Gavaletz, a bargaining unit member, and on July 29, 2016, the Union filed a grievance challenging the termination. Stipulation ¶¶13-14; R.R. 11a.

The Clerk of Courts instructed the County Solicitor to assert her "[Section] 1620 rights at any arbitration or interest proceeding." Stipulation ¶12; R.R. 11a. Following the grievance procedures set forth in Article XVI of the CBA, the parties completed Step I (initiation of grievance) and Step II (settlement negotiations). Stipulation ¶15; R.R. 11a. Because the grievance was not resolved, the Union notified the County of its intent to proceed to Step III, *i.e.*, arbitration. Stipulation ¶15; R.R. 11a. In response:

> [The Clerk of Courts] directed the County to refuse to approve or engage in any arbitration of the grievances involving the discharges of Rogers and Gavaletz, based on the exercise of her rights as a Row Officer under Section 1620 of the County Code (1620 Rights) asserting that (1) the CBA and the grievance and arbitration provisions of the CBA pursuant to which the grievances were submitted to arbitration infringe upon her right to hire, discharge, and supervise the employees of her office and (2) as a Row Officer, she is not bound or subject to those grievance provisions.

Stipulation ¶16; R.R. 11a. On October 28, 2016, the County Solicitor informed the Union that it refused "to select an arbitrator based [on] an objection raised by [the

4

Clerk of Courts] that the CBA was interfering with her 1620 Rights." Stipulation ¶17; R.R. 11a.

Based upon these stipulated facts, the County argued the grievances of Rogers and Gavaletz were not arbitrable. It asserted that Section 1620 of The County Code required the Board's dismissal of the Union's complaint. In support, it relied on *Troutman v. American Federation of State, County and Municipal Employees, District Council 88, AFL-CIO*, 87 A.3d 954 (Pa. Cmwlth. 2014). The Union contended that it was the arbitrator that had to decide, in the first instance, whether the grievances were arbitrable.

The Hearing Examiner issued a proposed decision and order, concluding "that the determination of arbitrability of grievances in the first instance is within the jurisdiction of the arbitrator and that employers unlawfully refuse to bargain in good faith when they refuse to arbitrate and argue arbitrability to the Board." Proposed Decision at 4 (internal citations omitted); R.R. 98a. Accordingly, the County committed an unfair labor practice under Section 1201(a)(1) and (5) of the Public Employe Relations Act[5] by not submitting the threshold question of arbitrability to the arbitrator. The Hearing Examiner recommended that the County be ordered to proceed to arbitration.

---

[5] Section 1201(a) states, in relevant part, as follows:

> (a) Public employers, their agents or representatives are prohibited from:
>> (1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act.
>> ***
>> (5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative.

43 P.S. §1101.1201(a).

The County filed exceptions to the Hearing Examiner's proposed decision. The Board dismissed the exceptions and made the proposed decision and order final. The Board stated, "it is well-settled that *all* disputes concerning arbitrability of a grievance under a collective bargaining agreement must first be presented to an arbitrator for determination." Board Adjudication at 4 (internal citations omitted) (emphasis in original); R.R. 129a. It explained that to allow "the employer to unilaterally refuse to submit a dispute to arbitration would in effect allow the employer's interpretation to control." Board Adjudication at 5 (quoting *East Pennsboro Area School District v. Pennsylvania Labor Relations Board*, 467 A.2d 1356, 1359 (Pa. Cmwlth. 1983)); R.R. 130a. The Board concluded, "it is black letter law that the issue of arbitrability may not be litigated before the Board, and a refusal to arbitrate a grievance is a *per se* unfair practice." Board Adjudication at 7 (citing *Pennsylvania Labor Relations Board v. Bald Eagle Area School District*, 451 A.2d 671 (Pa. 1982)); R.R. 132a.

The County has petitioned for this Court's review.[6] It asserts that the Board erred because the discharge of the two employees by the Clerk of Courts could not be resolved in accordance with the CBA and, thus, an arbitration proceeding was not the appropriate forum for resolving the question of arbitrability. In support, the County directs the Court to *Troutman*, 87 A.3d 954, which established the principle that a union can compel arbitration only where a row officer has tacitly or expressly

---

[6] This Court's review of a Board adjudication determines whether constitutional rights were violated, whether the factual findings are supported by substantial evidence, and whether an error of law was committed. *Teamsters Local 77 & 250 v. Pennsylvania Labor Relations Board*, 786 A.2d 299, 302 (Pa. Cmwlth. 2001). Our scope of review for legal questions is plenary and our standard of review is *de novo*. *Hospitality Management Corp. v. Department of Labor and Industry, Office of Unemployment Compensation Tax Services,* 171 A.3d 936, 938 n.5 (Pa. Cmwlth. 2017).

6

consented to grieve employee discharges.  Here, the Clerk of Courts did not consent to Articles XV and XVI of the CBA.[7]  Accordingly, these provisions of the CBA do not apply to the Clerk of Courts' discharge of the two employees in this case.

Section 903 of the Public Employe Relations Act states that "[a]rbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory."  43 P.S. §1101.903. The County argues Section 903 is not applicable because this case does not involve

_____

[7] Article XV of the CBA provides, in relevant part:

> The Employer shall not demote, suspend, discharge, or take any disciplinary action against any employee without just cause.

R.R. 42a. Article XVI of the CBA provides, in relevant part:

> All disputes between the County and the Union or between the County and any of its employees relating to the application or interpretation of this Agreement and/or any dispute concerning the wages, hours, working conditions or discipline of employees covered by this Agreement shall be settled in accordance with the following procedure:

> Step I.  All grievances must be initiated within fifteen (15) working days….  The grievance shall first be discussed orally by the grievant and/or his/her union representative, and his/her supervisor or his/her designee….  The supervisor or his/her designee must give his/her written answer within ten (10) working days of such meeting.

> Step II.  If a satisfactory settlement is not reached in Step I, the grievant must reduce his/her grievance to writing and forward a copy of same to the Head of Human Resources or his/her designee….  The Head of Human resources or his/her designee, the grievant and a Union Representative shall meet again in an attempt to settle the dispute.  A written answer must be given by the County within ten (10) working days of such meeting.

> Step III.  In the event no agreement is reached at Step II, the Union may upon written notice to the County, within ten (10) working days after receipt of the Step II answer, appeal the grievance to arbitration, or the grievance shall be deemed waived.  The County and/or the Union shall request the Pennsylvania Bureau of Mediation to submit a panel of seven (7) names of suggested arbitrators.  ….  The decision of the impartial arbitrator shall be final and binding, except as may be otherwise provided by law….

R.R. 43a-44a.

the interpretation of the CBA, which, as the parties have stipulated, is silent on Section 1620. The Clerk of Courts serving when the CBA was negotiated did not tacitly or expressly consent to waive his Section 1620 rights with respect to Articles XV and XVI of the CBA. The present Clerk of Courts asserted her Section 1620 rights immediately upon taking office. Therefore, under *Troutman*, the arbitrator lacked jurisdiction to hear the Union's grievance.

The Board and the Union respond that the Supreme Court has long held that the issue of arbitrability must be submitted first to an arbitrator and not to the Board or the courts. *Bald Eagle*, 451 A.2d 671. Further, in *East Pennsboro Area School District*, 467 A.2d at 1359, this Court rejected the employer's claim that it could avoid arbitration by claiming the applicable collective bargaining agreement needed no interpretation. They argue that *Troutman* did not overturn the long-established legal principle that an arbitrator's jurisdiction must, in the first instance, be presented to the arbitrator.

This Court's holding in *Troutman*, 87 A.3d at 955, is central to the County's appeal and we begin with its review. In *Troutman*, the county and its row officers filed a declaratory judgment action to resolve their dispute with the union over the row officers' asserted Section 1620 rights. In 1999, the row officers advised the county that they were asserting their Section 1620 rights to the fullest extent permitted by law, which stalled negotiations on a 2000 collective bargaining agreement. In 2001, the county, the union and the row officers entered into a side agreement to pursue a declaratory judgment action on the impact of Section 1620 upon collective bargaining. They also agreed to hold in abeyance approximately 30 grievances that had been filed, pending the outcome of the declaratory judgment action. The trial court granted judgment to the union, concluding that the row

8

officers were bound by provisions in the collective bargaining agreement relating to demotion, suspension, discharge and seniority (the disputed provisions) unless and until they were amended through collective bargaining. The row officers appealed to this Court, and this Court reversed.

We held that the county commissioners represented the row officers in collective bargaining matters. In this role, the county commissioners were authorized to enter into a collective bargaining agreement that limited the row officers' Section 1620 rights, "but only where [the] Row Officers have tacitly or expressly consented." *Troutman,* 87 A.3d at 964. In *Troutman,* the row officers had specifically forbid the county commissioners from negotiating the disputed provisions, depriving the county commissioners of authority to bargain the row officers' Section 1620 rights away. Accordingly, we reversed and remanded the matter to the trial court to enter declaratory judgment in favor of the county and the row officers.

This Court explained that absent consent, the county commissioners are "required to continue to negotiate the [d]isputed [p]rovisions or take them to interest arbitration in accordance with the provisions of the relevant labor statutes." *Troutman,* 87 A.3d at 965 (internal footnote omitted). We noted that Section 805 of the Public Employe Relations Act requires arbitration in collective bargaining impasses involving "employes directly involved with and necessary to the functioning of the courts of this Commonwealth…." 43 P.S. §1101.805.[8] Where

---

[8] It provides:

> Notwithstanding any other provisions of this act where representatives of units of guards at prisons or mental hospitals or units of employes directly involved with and necessary to the functioning of the courts of this Commonwealth have reached an impasse in collective bargaining and mediation as required in section 801 of this article [43 P.S. §1101.801] has not resolved the dispute, the impasse shall be

9

the row officers objected to the interest arbitration award, then the county commissioners had to appeal the award or allow the row officers to appeal.

*Troutman* established that once a row officer asserts Section 1620 rights, the county may not bargain them away. *Troutman* did not hold that a county can refuse to follow the terms of an existing collective bargaining agreement, to which the row officer did not object at the time the contract was negotiated.

The Union directs the Court to the statement in *Troutman* that the county commissioners were "required to … take [any disputed provisions] to … arbitration in accordance with the provisions of the relevant labor statutes." Union Brief at 17 (quoting *Troutman*, 87 A.3d at 965). One relevant provision of the "relevant" labor laws is Section 903 of the Public Employe Relations Act, which states as follows:

> Arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory. The procedure to be adopted is a proper subject of bargaining with the proviso that the final step shall provide for a binding decision by an arbitrator or a tri-partite board of arbitrators as the parties may agree. Any decisions of the arbitrator or arbitrators requiring legislation will only be effective if such legislation is enacted:
>
> > (1) If the parties cannot voluntarily agree upon the selection of an arbitrator, the parties shall notify the Bureau of Mediation of their inability to do so. The Bureau of Mediation shall then submit to the parties the names of seven arbitrators. Each party shall alternately strike a name until one name remains.

submitted to a panel of arbitrators whose decision shall be final and binding upon both parties with the proviso that the decisions of the arbitrators which would require legislative enactment to be effective shall be considered advisory only.

43 P.S. §1101.805.

The public employer shall strike the first name. The person remaining shall be the arbitrator.

(2) The costs of arbitration shall be shared equally by the parties. Fees paid to arbitrators shall be based on a schedule established by the Bureau of Mediation.

43 P.S. §1101.903.

The County responds that Section 903 does not apply to the instant appeal because there was no factual dispute, as evidenced by the stipulation. Under *Troutman,* the arbitrator lacks jurisdiction over a grievance arising from the 2011-2015 CBA. This represents the County's interpretation of the law. In *Bald Eagle*, 451 A.2d at 672, our Supreme Court cautioned that the arbitrability of a grievance must be resolved by the arbitrator in the first instance. To hold otherwise would be "folly" because it would allow "a full preliminary bout in the courts over the issue of an arbitrator's jurisdiction" and

would only encourage potential parties to such disputes to continue to follow the practice of preliminary litigating through one forum the power of another to decide the substantive issue. We condemn that practice and hold that hereafter issues involving conflicts between a public sector collective bargaining agreement and fundamental statutory policies of this Commonwealth must be presented first to arbitration for determination, subject to appropriate court review of any award in conflict with such policies.

*Id.* at 674.

In *East Pennsboro*, 467 A.2d at 1357, the parties entered into a collective bargaining agreement after a month-long strike by members of the teachers' union. Thereafter, the school district scheduled 170 days of student instruction, despite the state mandate of 180 days, and reduced the salaries of the teachers. The union filed a grievance, and the school district refused to arbitrate,

11

claiming the dispute was outside the scope of the collective bargaining agreement. In response, the union filed an unfair labor charge with the Board, which ordered arbitration. This Court affirmed the Board, explaining that to find to the contrary,

> [would permit] the employer to unilaterally refuse to submit a dispute to arbitration [and] would in effect allow the employer's interpretation to control. While the [Board] has statutory authority to determine questions of arbitrability when it decides an unfair labor practice has been committed by a refusal to arbitrate, *the Supreme Court has made clear that questions of arbitrability must first be submitted to an arbitrator* and that any refusal to arbitrate a dispute concerning a collective bargaining agreement is per se an unfair labor practice.

*Id*. at 1359 (emphasis added).

The Clerk of Courts has discharged two employees. The 2011-2015 CBA was negotiated prior to the Clerk of Courts taking office in 2016; however, it remains in effect until a new CBA is reached. Article XV of the CBA prohibits the discharge of any employee without just cause, and Article XVI of the CBA sets forth the grievance procedure that the parties must follow. Under *Bald Eagle,* the County must make its jurisdictional argument to the arbitrator and then seek judicial review if aggrieved by the arbitration award.

We hold that the Board did not err in holding the County engaged in unfair labor practices in violation of Section 1201(a)(1) and (5) of the Public Employe Relations Act by unilaterally determining the issue was not arbitrable and refusing to submit to arbitration.

Accordingly, the order of the Board is affirmed.

_____
MARY HANNAH LEAVITT, President Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Schuylkill County,                 :
           Petitioner        :
                                    :
        v.                   :   No. 1215 C.D. 2017
                                    :
Pennsylvania Labor Relations   :
Board,                           :
           Respondent     :

# **O R D E R**

AND NOW, this 14th day of November, 2018, the order of the Pennsylvania Labor Relations Board, dated August 15, 2017, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge